OSCN Found Document:BETTS V. TOYOTA, et al.

 

 
 BETTS V. TOYOTA, et al.2026 OK 22Case Number: 122040Decided: 04/14/2026THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2026 OK 22, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

WAYNE BETTS and KRISTIN BETTS, Plaintiffs/Appellants,
v.
TOYOTA MOTOR CORPORATION, a foreign corporation; TOYOTA MOTOR NORTH AMERICA, INC., a foreign corporation; and TOYOTA MOTOR SALES, U.S.A., INC., a foreign corporation, Defendants/Appellees.

ON CERTIORARI FROM THE COURT OF CIVIL APPEALS, DIVISION II

¶0 Appellants sued a car manufacturer for products liability. The district court granted the manufacturer's motion for summary judgment, holding that Texas's statute of repose barred Appellants' claim. Appellants appealed, and the Court of Civil Appeals reversed, concluding Texas law did not apply. This Court granted certiorari. We hold that, under the facts and circumstances of this case, Texas has the most significant relationship to the occurrence and parties involved, and Texas's statute of repose bars Appellants' claim.

COURT OF CIVIL APPEALS' OPINION VACATED;
DISTRICT COURT'S JUDGMENT AFFIRMED.

Richard L. Denney, Lydia JoAnn Barrett, Russell T. Bowlan, and Jason Eric Robinson, Denney & Barrett, P.C., Norman, Oklahoma, for Appellants.

Mary Quinn Cooper, Andrew L. Richardson, and Katie G. Crane, McAfee & Taft, P.C., Tulsa, Oklahoma, for Appellees.

Winchester, J.

¶1 Appellants Wayne and Kristin Betts (collectively "Betts") appeal a summary judgment in favor of Appellees Toyota Motor Corporation, Toyota Motor North America, Inc., and Toyota Motor Sales, U.S.A., Inc. (collectively "Toyota"). The Betts brought a products liability claim against Toyota after Wayne Betts ("Husband") was injured in a single vehicle, rollover car accident while driving a 2002 Toyota Sequoia. The issue before this Court is whether Texas's statute of repose for products liability claims bars the Betts' claim. We answer this question in the affirmative, as Texas has the most significant relationship to the parties regarding the statute of repose's applicability in this products liability case.

FACTS AND PROCEDURAL HISTORY

¶2 Toyota designed the 2002 Sequoia in Japan and manufactured the vehicle in Indiana. On January 10, 2002, Toyota first sold the vehicle in Georgia. In 2015, the vehicle was resold to Husband's grandmother in Texas. After her passing in 2016, Husband retitled the vehicle in his name.

¶3 At the time of the accident, the Betts resided in Arlington, Texas. 

¶4 The Betts asserted that they spent considerable time driving the vehicle in Oklahoma. For less than a year leading up to the accident, Husband worked as a frac hand and driver for Eco-Stim Energy Solutions, Inc. He traveled to Fairview, Oklahoma every two to four weeks for work, which required him to drive the subject vehicle and obtain a few oil changes while in Oklahoma.

¶5 On February 20, 2018, Husband picked up his brother-in-law around 2:30 a.m. and drove to Oklahoma to attend a work safety meeting. While driving in Fairview, Oklahoma, the vehicle lost traction due to icy road conditions. The Betts allege that, despite the vehicle clearly losing directional control, the electronic stability control failed to activate properly and did not correct the vehicle's path. As a result of the accident, Husband sustained injuries that left him paralyzed.

¶6 After the accident, Husband received medical care in Oklahoma for approximately one week. He then transferred to Baylor University Medical Center in Texas, where he received treatment for over two and a half months.

¶7 The Betts filed a products liability action against Toyota, alleging that the subject vehicle was defective. Toyota moved for summary judgment, arguing that Texas's 15-year statute of repose barred the Betts' claim. Toyota asserted that Texas law should apply because Texas had the most significant contacts to the parties and the accident. In response, the Betts argued that Oklahoma law should apply since Husband frequently traveled to Oklahoma for work and his injury occurred there. Relying on the most significant relationship test adopted by this Court in Brickner v. Gooden, 1974 OK 91525 P.2d 632

¶8 The Court of Civil Appeals ("COCA") reversed the district court's judgment. COCA applied both Brickner v. Gooden, which relied on § 145 of the Restatement (Second) of Conflict of Law, and Edwards v. McKee, 2003 OK CIV APP 5976 P.3d 73 

STANDARD OF REVIEW

¶9 Summary judgment resolves issues of law, and we review a district court's grant of summary judgment de novo. U.S. Bank, N.A. ex rel. Credit Suisse First Boston Heat 2005--4 v. Alexander, 2012 OK 43280 P.3d 936de novo standard, we subject the record to a new and independent examination without regard to the district court's reasoning or result. Gladstone v. Bartlesville Indep. Sch. Dist. No. 30, 2003 OK 3066 P.3d 442U.S. Bank, 2012 OK 43280 P.3d at 939. If reasonable individuals could reach different factual conclusions under the evidentiary materials, summary judgment is improper. Id.

DISCUSSION

¶10 This products liability case involves a 2002 Toyota Sequoia that the Betts contend was defective. Toyota argues that Texas's statute of repose should apply, barring the Betts' claim. Texas law requires a claimant to "commence a products liability action against a manufacturer or seller of a product before the end of 15 years after the date of the sale of the product by the defendant." Tex. Civ. Prac. & Rem. § 16.012(b) (West 2025). Conversely, the Betts argue that the Court should apply Oklahoma law, which does not impose a statute of repose for products liability actions. 

¶11 In Brickner v. Gooden, we adopted the Restatement's "most significant relationship" test for tort cases when there is a conflict of law. The plaintiffs in Brickner sought to recover for personal injuries resulting from an airplane crash that occurred in Mexico. 1974 OK 91525 P.2d at 634. The issue before the Court was whether the parties' rights and liabilities should be determined by the laws of Mexico or those of Oklahoma. The airplane operator argued that the law of the place of the injury should apply. However, the injured parties contended that the place having the most significant relationship with the occurrence and parties should apply. Id. ¶¶ 5-6, 525 P.2d at 634.

¶12 The Brickner Court expressly abandoned the lex loci delicti rule (which dictates that the law of the place of the wrong should apply) and held that the rights and liabilities of parties with respect to a specific tort issue shall be determined by the local law of the state with the most significant relationship to the occurrence and the parties. Id. ¶ 23, 525 P.2d at 637. It further adopted Restatement (Second) of Conflict of Law § 145, which outlines the factors to be evaluated based on their relative importance concerning the particular tort issue:

(1) the place where the injury occurred,

(2) the place where the conduct causing the injury occurred,

(3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(4) the place where the relationship, if any, between the parties occurred.

Id. (citing Restatement (Second) of Conflict of Law § 145 (1971)). 

¶13 The Brickner Court examined Emery v. Emery, 289 P.2d 218, 222-23 (Cal. 1955), wherein the California Supreme Court considered an action by minors against their father for personal injuries sustained in an automobile accident in Idaho. The parties were all residents of California. The court held that Idaho law would control and determine whether the defendant father would be liable for his conduct in driving the automobile. However, in determining the minors' ability to sue and the father's immunity from suit due to their family relationship, the law of the family domicile (California) would be applied. The court emphasized that it is undesirable that the rights, duties, disabilities, and immunities conferred or imposed by the family relationship should constantly change as family members cross state lines during temporary absences from home. Id.

¶14 The Brickner Court also discussed Schwartz v. Schwartz, 447 P.2d 254, 257-58 (Ariz. 1982), wherein a wife brought an action against her husband for injuries sustained in an automobile accident in Arizona. They were residents of New York and were in Arizona for a brief vacation at the time of the accident. The Arizona Supreme Court held that Arizona law would govern the issue of the husband's negligence. However, the wife's capacity to sue her husband in tort would be determined by the laws of New York, the domicile of the parties. Id.

¶15 Relying on these cases, the Brickner Court concluded that Oklahoma had the most significant relationship to the occurrence and parties. All the parties were residents of Oklahoma; the aircraft was hangered and registered in Oklahoma; and the trip both began and ended in Oklahoma. While the Court acknowledged that Mexico had an interest in the actions of the parties while they were within its borders and that the accident took place in Mexico, those aspects were not sufficient to alter the conclusion. The Court emphasized that "it would seem rather undesirable that the rights and obligations of the parties should be subject to change as the aircraft crossed the boundary lines of each jurisdiction." Brickner, 1974 OK 91525 P.2d at 638

¶16 Similarly, in Hightower v. Kansas City Southern Railway Co., 2003 OK 4570 P.3d 835Brickner, the laws of Oklahoma had the most significant relationship to the occurrence and parties based on these facts. Id. ¶ 15, 70 P.3d at 843.

¶17 The Brickner case, along with the cases discussed within it and subsequent related cases, are instructive here. These cases demonstrate that the law of one state (normally the state of the domicile of the parties) can apply to such issues as immunities, capacities to sue, rights, and duties of the parties in a case, without foreclosing that another state's law might be more suitable for another issue, like negligence in the operation of a vehicle. In this case, we must narrowly decide whether Texas's statute of repose for products liability claims applies to the subject vehicle; in other words, whether the Betts have the right to bring a claim, not whether the subject vehicle was defective at the time of the accident. We now apply the Brickner analysis to the facts at hand.

1. The Place where the Injury Occurred.

¶18 The first factor considers the place of injury, which occurred in Oklahoma. The Betts appear to argue that this factor is the most significant. However, this Court has rejected that position. Brickner, 1974 OK 91525 P.2d at 637. Toyota argues that since this is a products liability case, the fact that the accident occurred in Oklahoma is coincidental and is not decisive in the conflict of law analysis. We agree with Toyota. While the location of the injury can indeed play an important role, it can also be coincidental or, for various reasons, bear little relation to the occurrence and parties concerning a specific issue. Restatement (Second) of Conflict of Law § 145, cmt. e (1971).

¶19 The focus here is on the product itself--specifically, when and where it was manufactured, sold, and used. These factors are important in determining whether a products liability statute of repose applies, not the location of the injury. For instance, the crux of a products liability claim is that the product alleged to have caused the injury was defective when it left the control of the manufacturer or retailer. Kirkland v. Gen. Motors Corp., 1974 OK 52521 P.2d 1353Reynolds v. Porter, 1988 OK 88760 P.2d 816See Tex. Civ. Prac. & Rem. § 16.012(b) (West 2025).

¶20 The subject vehicle was placed into the stream of commerce in Georgia over 16 years ago and was subsequently resold in Texas. It was titled, registered, and garaged in Texas, and the owner was a Texas resident. Since the Betts primarily used the vehicle in Texas, it would typically be subject to Texas's statute of repose, except for the fact that it crossed state lines into Oklahoma at the time of the accident. As in Brickner, the rights and obligations of the parties should remain consistent, regardless of the vehicle crossing jurisdictional boundaries. Although Husband's injuries occurred in Oklahoma, the location of the accident was incidental given the circumstances of the case.

2. The Place where the Conduct Causing the Injury Occurred.

¶21 The second factor looks at the place where the conduct that caused the injury took place. In a products liability action, the relevant conduct occurs in the place where the defendant designed, manufactured, or first sold the product. See Kirkland, 1974 OK 52521 P.2d at 1363 (holding a plaintiff must prove that the defect existed in the product at the time the product left the possession and control of the manufacturer or seller). In this case, the locations relevant to the conduct that led to the injury include Japan, where Toyota designed the vehicle; Indiana, where Toyota manufactured the vehicle; and Georgia, where the vehicle entered the stream of commerce. Thus, the second factor has no bearing on the analysis at hand because the laws of Japan, Indiana, and Georgia are not at issue in this case.

3. The Domicile, Residence, Nationality, Place of Incorporation, and Place of Business of the Parties.

¶22 The third factor considers the domicile, residence, nationality, place of incorporation, and place of business of the parties involved. For tort cases, the importance of these contacts depends largely upon the extent to which they are grouped with other contacts. Restatement (Second) of Conflict of Law § 145, cmt. e (1971). The circumstances under which a driver can claim damages because of another's negligence may be determined by the local law of their common domicile, especially if that domicile is the state from which they departed and to which they intended to return. Id. § 145, cmt. d. The domicile of the parties may also be the state of the applicable law when the conduct and injury occurred in a place that is fortuitous and bears little relation to the occurrence and the parties involved. Id.

¶23 The Betts argue that this factor weighs in favor of Oklahoma since Husband worked in Oklahoma sometimes for weeks at a time and drove his car in Oklahoma. We disagree. As in Highwater and Brickner, this factor looks to the domicile from which Husband departed and to which he intended to return. Highwater, 2003 OK 4570 P.3d at 843; Brickner, 1974 OK 91525 P.2d at 638

¶24 Moreover, the place of incorporation and business of Toyota is disputed. 

4. The Place where the Relationship, if any, Between the Parties Occurred.

¶25 The fourth factor to consider is the place where the relationship between the parties is centered. If the injury stems from an action that occurred during the course of the relationship between the plaintiff and the defendant, the location of that relationship becomes an important aspect. Restatement (Second) of Conflict of Law § 145 cmt. e (1971). Here, when Husband's grandmother gave him the subject vehicle and he registered it in his name in Texas, any relationship he had with Toyota was centered in Texas. He owned and primarily used the vehicle in Texas. Thus, the fourth factor weighs slightly in favor of Texas.

5. General Conflict of Law Considerations.

¶26 The final factor to consider is the general concerns that arise in any conflict of law case. Id. § 6(2)(b)-(c), (e).

¶27 Texas has an interest in overseeing products sold and used in Texas. As a result, it enacted a products liability statute of repose to provide absolute protection to certain parties from the burden of indefinite potential liability. See Galbraith Eng'g. Consultants, Inc. v. Pochucha, 290 S.W.3d 863, 866 (Tex. 2009). At the same time, Oklahoma has an interest in the safety of its roadways. See Brickner, 1974 OK 91525 P.2d at 638

¶28 Another factor to consider is the protection of justified expectations by all parties. See Restatement (Second) of Conflict of Laws § 6(2)(f)-(g) (1971). With respect to any expectations in the protection of Oklahoma law, the Betts were Texas residents that initiated contact with Oklahoma when Husband drove into the state. The subject vehicle was not purchased or registered in Oklahoma. Instead, the Betts purchased, titled, and registered the vehicle in Texas. In addition, Toyota would have had a reasonable expectation that Texas law would govern a Texas vehicle that had work-related connections in Oklahoma.

¶29 We must also examine the certainty, predictability, uniformity of result, and the ease in the determination and application of the law to be applied. See Restatement (Second) of Conflict of Laws § 6(2)9(f)-(g) (1971). Under the circumstances of this case, applying Texas law would more likely foster predictability and uniformity. And it makes conflict of law determinations less complicated to hold that the state where a vehicle is registered and garaged should ordinarily supply the governing statute of repose, if any, for products liability claims concerning that vehicle.

CONCLUSION

¶30 Considering all the factors in Restatement (Second) of Conflict of Law § 145, we conclude that Texas has the more significant relationship to the parties as to the statute of repose's applicability in this products liability case. Consequently, Texas's statute of repose for products liability claims applies, and the Betts' claims are barred. We vacate COCA's opinion and affirm the district court's judgment.

COURT OF CIVIL APPEALS' OPINION VACATED;
DISTRICT COURT'S JUDGMENT AFFIRMED.

CONCUR: ROWE, C.J., KUEHN, V.C.J., WINCHESTER, EDMONDSON, GURICH, DARBY, KANE AND JETT, JJ. 

DISSENT: COMBS, J.

FOOTNOTES

Consol. Grain & Barge Co. v. Structural Sys., Inc., 2009 OK 14212 P.3d 1168

Edwards v. McKee, 2003 OK CIV APP 5976 P.3d 73Brickner, we adopted § 145 that applies to all torts and all issues in tort. The Court rejected the lex loci delicti rule (the law of the place of the wrong), while it simultaneously adopted § 145, affirming that it would consider all the relevant factors. In subsequent cases, we continued to take all factors into account. Our Court has never adopted the more specific § 146 relating only to personal injuries, nor do we do so today.

Section 6 factors relevant to the choice of the applicable rule of law include:

the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability, and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971).